Nunnemaker *v.* Lanier.

special term, reverse a multitude of verdicts taken at the circuit before another judge more learned than himself. In the present case, I think the judge at the circuit was right in his law ; and that is the only question under review.

I concur with Judge CLERKE, that the order of the special term should be reversed, with costs, and that the defendant be at liberty to enter judgment upon the direction of the judge at the circuit, dismissing the complaint, with costs.

SUTHERLAND, J. dissented.

Order reversed.

[NEW YORK GENERAL TERM, January 7, 1867. *Clerke, Leonard,* and *Sutherland,* Justices.]

———————•••———————

NUNNEMAKER and ALLEN *vs.* LANIER, survivor, &c.

The defendants received from the plaintiffs, for collection, a draft drawn by a bank upon the Ohio Life and Trust Company, and on presenting the same to the company, at its office in New York, they received in payment the check of the trust company upon a bank, and surrendered the draft. The defendants neglected to present the check of the trust company on the day they received it, and before banking hours of the next business day the trust company suspended payment, and its check was dishonored, on presentation. *Held* that the defendants having surrendered the draft, assumed the responsibility of taking the check of the drawee in payment. And that the existence of a custom, in the city of New York, among business men, to take the checks of the trust company without certification, in the same manner as bank checks, afforded no defense to an action by the plaintiffs to recover the amount of the draft.

APPEAL by the defendant from a judgment entered upon the report of a referee.

*J. E. Burrill,* for the appellant.

*P. Y. Cutler,* for the respondents.

Nunnemaker *v.* Lanier.

*By the Court,* LEONARD, J.   The defendant's firm, Winslow, Lanier & Co. received from the plaintiffs a draft drawn by the Dayton Bank upon The Ohio Life Insurance and Trust Company, for $800, for collection.   Messrs. Winslow, Lanier & Co. presented it to the Trust Company at the office of their agency in New York, and received in payment the check of the Trust Company, drawn upon the American Exchange Bank, and surrendered the check which they held for collection.   The defendants neglected to present the check received by them from the Trust Company on the day they received it, although there was sufficient time to do so during banking hours; and all checks of the Trust Company presented that day were duly honored by the said bank.   The Trust Company suspended payment, and their insolvency and suspension was publicly known before banking hours on the next business day.   The check of the Trust Company was dishonored upon presentation, and the defendants then demanded a return to them of the draft of the Dayton Bank, but were unable to procure it, and the Trust Company had in fact cancelled it after they had drawn and delivered their check upon the American Exchange Bank, in the same manner as in the case of paid checks.

The defendants rely upon the existence of a custom in the city of New York among business men to take the checks of the Trust Company without certification, in the same manner as bank checks, and insist that having done the business of collecting for the plaintiffs for a very small commission only, in the customary way prevailing at that time, they cannot be held liable for an imputed negligence in this case.

Unless a different rule prevails in respect to corporations doing a banking business from that applied to the case of private bankers, I am unable to perceive that the custom relied on affords any defense.

The defendants having surrendered the draft of the Dayton Bank, assumed the responsibility of taking the check of the party upon whom the draft was drawn in payment.   This

was done without the knowledge or authority of their correspondents. The act was their own, relying upon the assumed responsibility and wealth of the Trust Company. It is no excuse that they and others were in the habit of taking similar risks.

The defendants insist that the check of the Trust Company is not a payment, and that the plaintiffs can still resort to the Dayton Bank, the defendants having caused notices of protest to be served, as they claim, in due season. The fact may be so. It may be that the plaintiffs could have maintained an action against the Dayton Bank. It is not certain, however. The right to maintain such action might have depended upon the state of the accounts between the Trust Company and that bank, and whether the Dayton Bank would sustain any loss by reason of the cancellation and supposed payment of their draft before receiving notice of its dishonor. The plaintiffs cannot be compelled to resort to a doubtful remedy against another party.

There were some objections taken to the admission of evidence of an immaterial character, which might have been very properly excluded, but none of the evidence so admitted affected the result. The evidence related to the entries in the account books of the Trust Company; but no fact appears to have been found by the referee based upon such evidence. The facts found by the referee are nearly all of them stated by the defendants in their answer.

The judgment should be affirmed with costs.

[NEW YORK GENERAL TERM, January 7, 1867. *Leonard, Ingraham* and *Clerke*, Justices.]